DOMENGEAUX, Judge.
Plaintiffs, Robert and Hazel Atkinson, and their insurer, State Farm Fire and Casualty Company, sued defendants Gibson Products of Sulphur (hereinafter Gibson’s) and its insurer, Employers Commercial Union Insurance Company, and Unelco Electronics Corporation (hereinafter Unelco) to recover damages sustained, by them because of the loss of their home to fire.[1] The defendants, Gibson’s and Unelco, were the vendor and manufacturer respectively of an allegedly defective stereo radio and phonograph purchased by the Atkinsons as a Christmas gift for their teen-aged daughter, Jackie Atkinson (now Jackie Atkinson Ardoin), which stereo allegedly caused the fire in their home early Christmas morning in 1973.
The case was presented to a jury, which found no liability on the part of defendants. Plaintiffs have appealed. We find the substantial issue to be whether there is manifest error in the factual findings of the jury. The appellant also specifies as error certain jury instructions which are alleged to be improper. We affirm.
The home of Robert and Hazel Atkinson caught fire early Christmas morning in 1973 and was totally destroyed. The Atkin-sons sustained damages in the amount of $29,891.80, of which State Farm paid them $26,500.00 in accordance with its policy of insurance and the balance of the loss, $3,391.80 has been borne by the Atkinsons.
Present in the home at the time of the fire were Terry Atkinson, son of the individual plaintiffs, Terry Johnson and Bea Johnson, the former being the nephew of Mrs. Atkinson. Mr. and Mrs. Atkinson were at a funeral home making arrangements to have Mrs. Atkinson’s brother buried as he had died Christmas Eve. Jackie Atkinson, the daughter of the individual plaintiffs and the recipient of the stereo as a Christmas gift, was spending the night with Sarah Crawford, a girl friend who lived across the street from the Atkinsons.
The testimony in the case established that on approximately December 5,. 1973, Mrs. Atkinson purchased from Gibson Discount Store in Sulphur a stereo-phonograph system which was manufactured by Unelco Electronics. The particular item purchased was the display model. The radio part of the system was tested before the equipment left the store. The record player component was not tested in the store. The original box was misplaced so the stereo-phonograph was put in a casual box with no special packing material.
The stereo-phonograph was to be Jackie’s Christmas present; therefore Mrs. Atkinson took the stereo-phonograph and wrapped it and stored the item in a closet until Christmas. The Atkinsons were planning a trip for Christmas, therefore, decided to open their gifts before they left on December 23rd.
Jackie unwrapped her present in front of the family and played the unit. Immediately upon use a problem developed with one of the speakers where one of its wires plugged into the unit, but this was apparently remedied by the use of scotch tape and admittedly had nothing to do with the fire. Mrs. Atkinson told Jackie to put the unit up and she would return it to Gibson’s. With the excitement of Christmas and the new gift, Jackie took the unit to her room and set it up on a table next to the outside wall.
Following the death of Mrs. Atkinson’s brother on Christmas Eve, other members *1289 of the family came to Lake Charles for the funeral. The Johnsons arrived at approximately 11:00 P.M. on the night of the 24th and subsequently had conversations with Terry Atkinson and Jackie Atkinson and Sarah Crawford, a friend with whom Jackie was spending the night. The Johnsons, tired from travel, went to bed. Terry Atkinson, Jackie Atkinson, and her friend went to Jackie’s room and played the stereo-phonograph system. After a short time, Jackie turned off the record player, but there was some doubt as to whether the entire system was shut off. Jackie left and went to her friend’s house across the street. Terry Atkinson proceeded to go to sleep after listening to his battery operated tape recorder which was in no way connected with the Unelco unit involved herein. His testimony is that there was no smoking in the bedroom, but this is subject to doubt. Terry went to sleep in the room for a short period of time which he estimates to be approximately two hours and was awakened by smoke in the room.
Under cross-examination Terry Atkinson admitted that the entire room near the stereo was on fire. This is to say that the carpet, wall, table and bedding were aflame. It was the further testimony of Terry Atkinson that he observed sparks and flames coming from the rear of the stereo unit. However, this testimony is later contradicted by his own testimony when he admitted that such sparks could have been coming from the electrical wall outlet, below the stereo unit, or even the wood paneling in the room. Terry Atkinson finally admitted that he had no knowledge of the origin of the sparks.
Terry Johnson went to investigate the cause of the smoke in the house. Terry Atkinson proceeded to go across the street to call the fire department and by the time the fire department arrived the fire was out of control and the house, including the stereo-phonograph system, was completely destroyed.
Plaintiffs-appellants assign as error the special instructions given to the jury by the trial judge, and the failure of the judge to give additional charges to the jury. The district court judge instructed the jury as follows:[2]
“The following are issues in this case for your determination:
(1) Was the fire in the Atkinson residence proximately caused by a defect in design, composition or manufacture by Unelco of the radio-stereo unit which was unreasonably dangerous to normal use of the article; and if so, should Unelco have reasonably anticipated such a fire?
(2) Did Gibson Products Company of Sulphur know or should it have known of the existence of such defect?
(3) Was Gibson Products Company of Sulphur otherwise guilty of negligence that was a proximate cause of the fire?”
The Louisiana Supreme Court in the landmark case of Weber v. Fidelity & Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754 stated:
“A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving that the product was defective, i. e., unreasonably dangerous to normal use, and that the plaintiff’s injuries were caused by reason of the defect.”
The jury instructions given by the trial court in this instance were patterned after the language in the Weber case.
Plaintiffs complain that the inclusion of the foreseeability element (as laid *1290 out in Weber) in these jury charges contradicts the law applicable in products liability cases. We disagree. Plaintiffs do not allege in their petition a defect in the manufacture of the stereo; rather, plaintiffs allege a defect in the design of the stereo, namely the absence of fuses which might prevent problems with the circuit breaker. The standard of care for a defendant who allegedly produces a defectively designed product approaches the negligence standard. See Robertson, Manufacturer’s Liability for Defective Products in Louisiana, 50 Tul.L.Rev. 50 at 65-66 (1975) and cases cited therein.
Be that as it may, even if all of the plaintiffs’ desired instructions had been given, we find that the jury had a reasonable basis for its decision. Plaintiffs did not prove a defect in the stereo. The key witness was Terry Atkinson, and his testimony concerning his smoking in the bedroom is subject to doubt. It was within the jury’s province to determine his credibility. Also, it was shown that in all probability Jackie Atkinson Ardoin shut off the stereo before leaving the house. The expert testimony on the chances of the stereo causing a fire when turned off was to the effect that such an occurrence would happen “once in a million times”. Finally, the fire could have been started by a defect in the electrical wiring in the house, which was installed by Robert Atkinson, who was by his own admission not an expert electrician.
Considering the evidence as a whole, we find no manifest error in the jury’s finding that plaintiffs did not sustain their burden of proof.[3]
Accordingly, we affirm the decision of the trial court, costs to be cast against the plaintiffs-appellants.
AFFIRMED.

. Defendants Gibson’s and its insurer third partied Unelco, demanding indemnity in the event Gibson’s was found liable in the primary action.

. These charges were made at plaintiff’s request. However, not all the requested charges were given.

. In American Guaranty and Liability Insurance Company v. Little, 328 So.2d 706 (La.App. 3rd Cir. 1976), a similar factual situation was presented but the additional evidence as to causation distinguishes that case from the instant case.